Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| JESÚS MANUEL RODRÍGUEZ ROSARIO<br>Parte Peticionaria<br><br>v.<br><br>EX PARTE | KLCE202500427 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Bayamón<br><br>Civil Núm.:<br>BY2024CV05284<br><br>Sobre:<br>Solicitud Eliminación del Registro de Ofensores Sexuales |
| --- | --- | --- |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio y el Juez Rodríguez Flores.

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de mayo de 2025.

Comparece el Sr. Jesús Manuel Rodríguez Rosario (señor Rodríguez Rosario) mediante recurso de *certiorari*. Solicita la revocación de la Resolución emitida el 18 de marzo de 2025, por el Tribunal de Primera Instancia, Sala Superior de Bayamón, mediante la cual determinó que el señor Rodríguez Rosario deberá estar en el Registro de Personas Convictas por Delitos Sexuales Violentos y Abuso Contra Menores de manera vitalicia.

Por los fundamentos que expondremos a continuación, **expedimos y confirmamos** la expedición del recurso de *certiorari*.

I.

El **29 de septiembre de 2000** el señor Rodríguez Rosario fue convicto de dos (2) cargos por el Art. 99 -Violación- del Código Penal de 1974, en modalidad de tentativa, con una pena de sentencia suspendida de diez (10) años y un (1) cargo por el Art. 105 -Actos Lascivos- del Código Penal de 1974, también en modalidad de tentativa, con una pena de dos (2) años concurrentes entre sí. Dichos delitos fueron cometidos contra una menor de edad de 13

Número Identificador
RES2025_____

años. El señor Rodríguez Rosario cumplió su sentencia suspendida al 29 de septiembre de 2010.

Así las cosas, el **9 de septiembre de 2024**, el señor Rodríguez Rosario presentó una solicitud para que su nombre fuera eliminado de la lista de ofensores sexuales. Arguyó que, conforme al Artículo 5 de la Ley Núm. 28 de 1 de julio de 1997[1], una persona convicta permanecería en el registro de ofensores por un período de diez (10) años desde que comienza a cumplir el beneficio de una sentencia suspendida. También alegó que la Ley Núm. 266 del 9 septiembre de 2004[2], que enmendó al Ley Núm. 28, *supra*, estableció un término mínimo de diez (10) años para permanecer en el registro desde el cumplimiento con la sentencia impuesta. Conforme lo anterior, concluyó que habían transcurrido veintitrés (23) años desde que comenzó a cumplir su sentencia y que con posterioridad no había cometido otro delito. Por tanto, debía ser excluido del registro de ofensores.

El 17 de septiembre de 2024, el Ministerio Público se opuso. En apretada síntesis, mencionó que cuando se aprobó la Ley 266 en el 2004, *supra*, el señor Rodríguez Rosario no había terminado de cumplir sus diez (10) años de condena. Como antes mencionáramos, bajo la Ley 266, *supra*, el término para solicitar la exclusión comenzaba a decursar una vez "cumplida la sentencia". Ante esto, y conforme a la retroactividad del Art. 15 de la Ley Núm. 266, *supra*, el término de diez (10) años para solicitar la exclusión del registro no era a partir del 29 de septiembre de 2010, sino del 29 de septiembre de 2020.

---

[1] Conocida como *Ley del Registro de Personas Convictas por Delitos Sexuales y Abuso Contra Menores*, según enmendada.
[2] Conocida como *Ley del Registro de Personas Convictas por Delitos Sexuales y Abuso Contra Menores*, según enmendada.

En el año 2011, la Ley Núm. 266, *supra*, fue enmendada por la **Ley Núm. 243**[3] de 14 de diciembre de 2011. Resalta el Ministerio Público en su oposición, que la ley se enmendó antes que le naciera el derecho al señor Rodríguez Rosario a solicitar la exclusión del registro de ofensores, que era a partir del 29 de septiembre de 2020. También nos señalan, que esta nueva enmienda estableció tres (3) clasificaciones de ofensores sexuales entre la cuales, el Ofensor Tipo III, es la clasificación que le corresponde al señor Rodríguez Rosario. Esta clasificación como Ofensor Tipo III, tiene la consecuencia de que la inclusión en el registro sea de manera vitalicia. Por último, argumentó que la Ley Núm. 243-2011, *supra,* no menoscaba los derechos constitucionales del señor Rodríguez Rosario, ya que dicho estatuto es una medida de protección social que no tiene un propósito punitivo. Siendo ello así, no le aplicaba la garantía constitucional contra leyes *ex post facto.*

Tras analizar los planteamientos de las partes, el foro a quo dictó la Resolución recurrida. En el dictamen concluyó que los delitos por los cuales el señor Rodríguez Rosario fue procesado y resultó convicto lo clasifican como un Ofensor Tipo III, por lo cual debe permanecer de forma vitalicia en el registro.

En desacuerdo con dicho proceder, el señor Rodríguez Rosario solicitó reconsideración del dictamen. Dicha solicitud fue denegada por el foro primario.

Inconforme, el peticionario presentó este recurso de *certiorari* y formuló los siguientes señalamientos de error:

> PRIMER SEÑALAMIENTO DE ERROR: Erró el TPI al declarar No Ha Lugar la petición presentada por el Peticionario violentando las protecciones constitucionales federales contra las protecciones contra castigos *ex post facto*.

---

[3] Para enmendar la Ley 266 de 2004; Ley del Registro de Personas Convictas por Delitos Sexuales y Abuso Contra Menores"; enmendar el Artículo 8 de la Ley Núm. 175 de 1998; Ley del Banco de Datos de ADN de Puerto Rico.

SEGUNDO SEÑALAMIENTO DE ERROR: Erró el TPI al declarar No Ha Lugar la petición presentada por el Peticionario al determinar que la aplicación retroactiva de las disposiciones de la Ley 243-2011 son compulsorias cuando del mismo cuerpo de la Ley 243 de 2011 se desprende que el legislador concedió la discreción para la aplicación retroactivamente de las disposiciones de la Ley Número 243-2011.

TERCER SEÑALAMIENTO DE ERROR: Erró el TPI al declarar No Ha Lugar la petición presentada por el Peticionario al implementar una Ley de manera contraria a la intención que tuvo el Legislador cuando expresó que dicha Ley no era una de carácter punitivo, convirtiéndola precisamente en eso al no hacer uso de la discreción que le fuera concedida por el Legislador a nuestros jueces.

II.

A.

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de superior jerarquía puede revisar, a su discreción, una decisión interlocutoria de un tribunal inferior.[4]

Ante un recurso de *certiorari* civil, tenemos que evaluar nuestra autoridad para expedir el mismo al amparo de la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V.[5] Ésta dispone que, el recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia solamente se expedirá por el Tribunal de Apelaciones cuando se recurra de una orden o resolución bajo remedios provisionales de la Regla 56, *injunctions* de la Regla 57, o de la denegatoria de una moción de carácter dispositivo.

No obstante, y por excepción a lo dispuesto anteriormente, el foro apelativo podrá expedir el recurso cuando se recurre de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, casos de relaciones de familia, casos revestidos de

---

[4] *Caribbean Orthopedics v. Medshape et al.,* 207 DPR 994, 1004 (2021); *800 Ponce De León v. AIG,* 205 DPR 163, 174 (2020).
[5] *Caribbean Orthopedics v. Medshape et al.,* supra.; *Scotiabank v. ZAF Corp.,* 202 DPR 478, 486 (2019).

interés público o cualquier otra situación, en la que esperar por una apelación constituiría un fracaso irremediable de la justicia. Según dispuesto en la Regla 52.1, *supra*, al denegar la expedición de un recurso de *certiorari*, el Tribunal de Apelaciones no tiene que fundamentar su decisión. *Íd.*

Superado dicho análisis, y aun cuando un asunto esté comprendido dentro de las materias que podemos revisar de conformidad con la Regla 52.1, *supra*, para poder ejercer debidamente nuestra facultad revisora es menester evaluar si, a la luz de los criterios enumerados en la Regla 40 de nuestro Reglamento, 4 LPRA Ap. XXII-B, R. 40, se justifica nuestra intervención. Estos criterios son:

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

En fin, la Regla 52.1 de Procedimiento Civil, *supra*, enumera en forma taxativa aquellas instancias en las cuales el Tribunal de Apelaciones no acogerá una petición de *certiorari*, mientras que la Regla 40 del Reglamento del Tribunal de Apelaciones guía la

discreción de este foro en aquellos asuntos en los que sí se permite entender, pero en los que los jueces ejercerán su discreción.[6]

Lo anterior impone a este Tribunal la obligación de ejercer prudentemente su juicio al intervenir con el discernimiento del foro de instancia, de forma que no se interrumpa injustificadamente el curso corriente de los casos ante ese foro.[7] Por tanto, de no estar presente ninguno de los criterios esbozados, procede abstenernos de expedir el auto solicitado para que continúen sin mayor dilación los procedimientos del caso ante el foro primario.

B.

El Tribunal Supremo ha establecido que los foros revisores no interfieren con las facultades discrecionales de los foros primarios, exceptuando aquellas circunstancias en las que se demuestre que éstos: (1) actuaron con prejuicio o parcialidad; (2) incurrieron en un craso abuso de discreción, o (3) se equivocaron en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo.[8] Además, se requiere que la intervención en esta etapa evite un perjuicio sustancial.[9]

La discreción judicial se define como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión Justiciera".[10] El ejercicio de este discernimiento se encuentra estrechamente relacionado con el concepto de razonabilidad.[11] Así pues, la discreción no implica que los tribunales puedan actuar de una forma u otra en abstracción del resto del derecho.[12]

---

[6] *Torres González v. Zaragosa Meléndez,* 211 DPR 821, 849 (2023).

[7] *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008).

[8] *Rivera et al. v. Arcos Dorados et al.,* supra, pág. 210; *Cruz Flores et al. v. Hosp. Ryder et al.*, 210 DPR 465, 497 (2022); *Rivera y otros v. Bco. Popular*, supra, pág. 155.

[9] *Lluch v. España Service Sta.,* 117 DPR 729, 745 (1986).

[10] *Rivera et al. v. Arcos Dorados et al.,* supra, citando a *Bco. Popular de P.R. v. Mun. de Aguadilla*, 144 DPR 651, 657–658 (1997).

[11] *VS PR, LLC v. Drift-Wind*, 207 DPR 253, 272 (2021); *Rivera y otros v. Bco. Popular*, supra.

[12] *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 435 (2013); *Bco. Popular de P.R. v. Mun. de Aguadilla*, supra, pág. 658.

El Tribunal Supremo ha expresado que un tribunal abusa de su discreción

> [...] cuando el juez no toma en cuenta e ignora en la decisión que emite, sin fundamento para ello, un hecho material importante que no podía ser pasado por alto; cuando el juez, por el contrario, sin justificación ni fundamento alguno, concede gran peso y valor a un hecho irrelevante e inmaterial y basa su decisión exclusivamente en éste, o cuando, no obstante considerar y tomar en cuenta todos los hechos materiales e importantes y descartar los irrelevantes, el juez los sopesa y calibra livianamente.[13]

## C.

La **Ley Núm. 28-1997**, creó el Registro de Personas Convictas por Delitos Sexuales Violentos y Abuso contra Menores, según enmendada. Dicha ley establecía en su artículo 5 que las personas convictas se mantendrían en el Registro por un período de diez (10) años "desde que la persona cumplió la sentencia de reclusión, desde que comenzó a cumplir la sentencia bajo el beneficio de libertad a prueba o desde que es liberada bajo palabra." La ley dispuso que, una vez transcurrido este término, los datos del convicto serían eliminados. El incumplimiento de las disposiciones de la ley constituía delito menos grave.

Posteriormente, la Ley Núm. 28-1997 fue derogada por la **Ley Núm. 266-2004**, Registro de Personas Convictas por Delitos Sexuales y Abuso de Menores. La ley estableció como política pública que el Registro no tenía un propósito punitivo sino garantizar la seguridad, protección y bienestar general de la población más vulnerable de la sociedad.

Esta ley incluyó en el Registro a aquellos que se encontraran recluidos o participando en algún programa de desvío o aquellas personas que se les revocara su libertad por el incumplimiento de alguna condición. Además, mantuvo la obligación de permanecer en

---

[13] *SLG ZapataRivera v. J.F. Montalvo,* supra, citando a *Pueblo v. Rivera Santiago,* 176 DPR 559, 580 (2009)).

el Registro por un "periodo mínimo de diez (10) años desde que cumplió la sentencia impuesta". Véase art. 5 de la Ley Núm. 266-2004. El incumplimiento de las disposiciones de la ley constituía delito menos grave. La ley obligaba a mantener actualizada la información en el Registro anualmente.

Posteriormente, la Ley Núm. 266-2004 fue enmendada por la **Ley Núm. 243-2011**. El propósito de las enmiendas fue atemperar la ley local a la ley federal "Adam Walsh Child Protection and Safety Act of 2006" también conocida como el "Sex Offender Registration and Notification Act (SORNA)". Se reiteró que el propósito de la ley no es uno punitivo, sino garantizar la seguridad de la ciudadanía.

La Ley 243-2011 organizó los ofensores sexuales en Ofensor Sexual Tipo I, Tipo II y Tipo III. Dicha ley estableció qué delitos corresponden a cada uno de los tipos. Para cada tipo, se establece, entre otros asuntos, el tiempo durante el cual la persona tendrá que permanecer en el Registro. Esta enmienda requiere que los ofensores sexuales Tipo I, II y III ingresen al Registro, 4 LPRA sec. 536a(a), y dichos tipos se definen así (4 LPRA sec. 536(8-10):

(8) Ofensor Sexual Tipo I.-Personas que resulten convictas por los siguientes delitos o su tentativa o conspiración, cuando se incurre en conducta constitutiva de abuso sexual:

(a) Restricción de la libertad, cuando la víctima fuere menor de dieciocho (18) años, según comprendido en la sec. 4796(e) del Título 33.

(b) Restricción de libertad agravada, cuando la víctima fuere menor de dieciséis (16) años, según comprendido en el Artículo 131(e) de la Ley Núm. 115 de 22 de julio de 1974, según enmendada.

(c) Delito de maltrato a menores, según establecido en los Artículos 75 y 76 de la Ley 177-2003, cuando se incurre en conducta constitutiva de abuso sexual.

(d) Maltrato agravado conyugal, cuando se cometiere y simultáneamente se incurriere en conducta constitutiva de abuso sexual, en maltrato de un menor, según definido en la Ley 177-2003, según comprendido en la sec. 632(g) del Título 8.

(e) Envío, transportación, venta, distribución, publicación, exhibición o posesión de material obsceno; Espectáculos obscenos; Exposiciones deshonestas cuando el acto tuviere lugar en presencia de una persona menor de 16 años, según establecido en los Artículos 106, 113 y 114 de la Ley Núm. 115 de 22 de julio de 1974, según enmendada; y en las secs. 4783 y 4784 del Título 33.

(f) Exposiciones obscenas; Proposición obscena, según tipificados en las secs. 4775 y 4776 del Título 33.

(g) Cualquier delito antecedente o sucesor de los mencionados en las cláusulas (a), (b), (c), (d), (e) o (f) de este inciso.

(9) Ofensor Sexual Tipo II.-Personas que resulten convictas por los siguientes delitos o su tentativa o conspiración cuando la víctima fuere un menor de edad:

(a) Actos lascivos o impúdicos; proxenetismo o comercio de personas; delitos contra la protección de menores, perversión de menores cuando se admitiere o retuviere a un menor de dieciocho (18) años en una casa de prostitución o sodomía, comprendidos en los Artículos 105, 110(a) y (c), 111(a) y 115 de la Ley Núm. 115 de 22 de julio de 1974, según enmendada.

(b) Actos lascivos, proxenetismo, rufianismo y comercio de personas; producción de pornografía infantil; posesión y distribución de pornografía infantil; utilización de un menor para pornografía infantil; corrupción de menores cuando se admitiere o retuviere a un menor en una casa de prostitución o de comercio de sodomía, comprendidos en las secs. 4765(e), 4772, 4781(a), 4785, 4785 y 4787 del Título 33.

(c) Agresión sexual, comprendida en los incisos (f), (h), (i) de la sec. 4770 del Título 33.

(d) Un Ofensor Sexual Tipo I convicto anteriormente de un delito sexual y que posteriormente comete otro delito sexual o su tentativa o conspiración.

(e) Cualquier delito o su tentativa antecedente o sucesor de los mencionados en las cláusulas (a), (b) o (c) de este inciso.

(10) Ofensor Sexual Tipo III.-Que resulten convictas por los siguientes delitos o su tentativa:

(a) Violación; seducción; sodomía; actos lascivos cuando la víctima no ha cumplido los dieciséis (16) años; incesto; secuestro cuando la víctima fuere menor de dieciocho (18) años y no fuere su hijo, robo de menores comprendidos en los Artículos 99, 101, 103, 105, 122, 137-A(a) y 160, respectivamente, de la Ley Núm. 115 de 22 de julio de 1974, según enmendada; y agresión sexual conyugal, según tipificada en la sec. 635 del Título 8.

(b) Agresión Sexual, según comprendido en los incisos (a), (b), (c), (d), (e) o (g) de la sec. 4770 del Título 33.

(c) Actos lascivos, cuando la víctima no ha cumplido los trece (13) años de edad; secuestro de menores; secuestro agravado cuando la víctima fuere menor de dieciocho (18) años, según comprendidos en las secs. 4762, 4772 y 4798(a) del Título 33.

(d) Un Ofensor Sexual Tipo II convicto anteriormente de un delito sexual y que posteriormente comete otro delito sexual.

(e) Cualquier delito antecedente o sucesor de los mencionados en las cláusulas (a), (b) y (c) de este inciso.

Así pues, un Ofensor Sexual Tipo I se tendrá que presentar anualmente y sus datos deberán permanecer en el Registro por 15 años; un Ofensor Sexual Tipo II se deberá reportar cada seis meses y permanecer en el Registro por 25 años; y, por último, un Ofensor

Sexual Tipo III deberá reportarse cada tres meses y permanecer en el Registro de por vida. 4 LPRA sec. 536c.

### III.

No se aprobarán leyes *ex post facto*, ordena la Sección 12 del Artículo II, de la Carta de Derechos de la Constitución de Puerto Rico.[14]  La protección contra leyes *ex post facto* se activa cuando al aplicar retroactivamente una ley —que le es desfavorable al acusado o convicto— en comparación con la ley vigente al momento en que se cometió el delito.[15] De modo que, existen cuatro (4) categorías de estatutos que —de aplicarse retroactivamente— violarían la prohibición de leyes ex post facto, a saber: (1) leyes que criminalizan y castigan un acto que al ser realizado no era delito; (2) leyes que agravan un delito o lo hacen mayor de lo que era al momento de ser cometido; (3) leyes que alteran el castigo imponiendo una pena mayor que la fijada para el delito al momento de ser cometido; y (4) leyes que alteran las reglas de evidencia exigiendo menos prueba que la requerida por ley al momento de la comisión del delito para castigar al acusado o reduciendo el quantum de evidencia necesario para encontrarlo culpable.

No obstante, sí podemos aplicar retroactivamente una ley penal cuando resuelven que determinada conducta está inmune de castigo, expanden una defensa del acusado o restringen la pena por determinado delito. Es decir, siempre que favorezca a la persona imputada de delito[16]. No obstante, la referida protección constitucional no alcanza a las leyes de naturaleza civil;[17] sin embargo, no pueden aplicarse retroactivamente sin restricción.

En cuanto a la aplicación retroactiva de la Ley Núm. 266-2004, según enmendada por la Ley Núm. 243-2011, ha sido objeto

---

[14] *Const. de ELA, LPRA, Tomo* 1.
[15] *González Fuentes v ELA,* 167 DPR 400 (2006).
[16] *Pueblo v. Thompson Faberllé*, 180 DPR 497 (2010)
[17] *González Fuentes v. ELA, supra.*

de discusión y análisis por el Tribunal Supremo de Puerto Rico, dentro de los cuales resaltamos *Pueblo v. Ferrer Maldonado*, 201 DPR 974 (2019). En este caso el señor Ferrer Maldonado hizo alegación de culpabilidad en un acuerdo con el Ministerio Público por ciertos delitos sexuales. Se le impuso una pena de quince años y medio (15 1/2) bajo el régimen de libertad a prueba, y su inscripción en el Registro de Ofensores Sexuales por el término de diez (10) años. El 28 de junio de 2016, solicitó la eliminación del Registro, sin embargo, no había cumplido con su condena cuando la Ley Núm. 28-1997 fue derogada por la Ley Núm. 266-2004, según enmendada.

El TPI denegó la petición del señor Ferrer Maldonado. Dicha determinación fue revocada por el Tribunal de Apelaciones que ordenó excluir al señor Ferrer del Registro de Ofensores Sexuales, porque a pesar del carácter civil de la ley que habilita el Registro, esta cae dentro de aquellas leyes que agravan un delito o hacen más onerosa la forma de cumplir la pena impuesta. Sin embargo, el Tribunal Supremo de Puerto Rico revocó la determinación del foro apelativo, y restituyó la decisión del TPI. Aplicó el *test* del Tribunal Supremo de los Estados Unidos en *Smith v. Doe*.[18] Estableció —como primer paso— el determinar si la intención legislativa era imponer un castigo al Ofensor Sexual mediante la aprobación del Registro. De concluirse que la intención es punitiva, el análisis simplemente culmina. Por el contrario, si se determina que la intención legislativa es crear una medida civil, no punitiva, entonces se procede examinar si el efecto de la misma —es tan punitivo— que anula dicha intención. Para este segundo análisis, debía aplicar cinco (5) factores: (1) si la sanción impuesta se ha considerado

---

[18] 538 US 84 (2002). Allí, analizó la constitucionalidad de la ley estatal de Alaska, conocida como *Alaska Sex Offender Registration Act* (ASORA), la cual era de naturaleza civil.

históricamente como un "castigo" (es decir, si el objetivo de la ley es la retribución o servir como un disuasivo); (2) si la legislación establece alguna discapacidad o restricción para su implantación; (3) si la medida legislativa aplica a una conducta ya considerada como un delito; (4) si la legislación tiene una relación racional con un propósito no punitivo; y (5) si la medida legislativa resulta excesiva en contraposición a ese propósito no punitivo.

El Tribunal Supremo de Estados Unidos determinó que la Ley de Alaska no era punitiva y su aplicación retroactiva no violaba la protección constitucional federal contra leyes *ex post facto*.

Por su parte, en *Pueblo v. Ferrer Maldonado*, supra —luego de analizar la Ley Núm. 266-2004, según enmendada por la Ley Núm. 243-2011— a la luz de los cinco factores antes mencionados, concluyó que la ley es de carácter civil, no punitiva, por lo que su aplicación retroactiva no violaba la prohibición constitucional en contra de la aplicación de las leyes *ex post facto*. Sin embargo, reconoció que le corresponde a los jueces decidir en cuáles instancias deben o no aplicarse retroactivamente las disposiciones de la referida ley. Al ejercer esta discreción, los tribunales deben considerar si la aplicación retroactiva de la Ley Núm. 266-2004, según enmendada por la Ley Núm. 243-2011, viola la prohibición constitucional en contra de la aplicación de las leyes *ex post facto*; lo anterior independientemente de que el estatuto fue descrito como una medida de carácter civil, no punitiva. Así pues, le corresponde a los jueces analizar, no solo la intención legislativa, sino los efectos prácticos de la ley civil, a tenor con los hechos particulares de cada caso, en miras de concluir si la misma viola la referida protección constitucional.

IV.

El Sr. Rodríguez Rosario sostiene que el foro primario incidió al no excluirlo del Registro de Ofensores Sexuales. Adujo, que bajo

la derogada Ley Núm. 28-1997 —vigente a la fecha de los hechos y de la sentencia— debía permanecer inscrito por el término de diez (10) años. También arguyó que la aplicación de la Ley Núm. 243-2011, la cual requiere la inscripción de por vida en el Registro para los Ofensores Sexuales Tipo III, contraviene la protección constitucional contra las leyes *ex post facto*. Luego de examinar tanto la evolución del Registro a través de las diferentes enmiendas, como las disposiciones de nuestro Tribunal Supremo, debemos concluir que el TPI no cometió los errores señalados.

A luz del marco jurídico antes reseñado, resulta un hecho incuestionable que lo resuelto por el Tribunal Supremo de Puerto Rico en *Pueblo v. Ferrer Maldonado, supra,* dispone de la presente controversia. Allí, nuestro Tribunal Supremo sostuvo la constitucionalidad de la aplicación retroactiva de la Ley Núm. 243-2011, incluso en aquellas instancias donde el convicto debe permanecer inscrito de por vida.

Según discutiéramos, la Ley Núm. 243-2011 modificó el esquema de clasificación de los ofensores sexuales según la gravedad del delito cometido. En el presente caso, el señor Rodríguez Rosario fue convicto por el delito de violación y actos lascivos, en su modalidad de tentativa cometidos contra una menor de 13 años, el **29 de septiembre de 2000**. Sin terminar de cumplir sus diez (10) años de su sentencia suspendida, la Ley Núm. 28-1997 fue enmendada por la Ley Núm. 266-2004, para establecer que la solicitud para la exclusión del registro surgiría una vez **cumplida la sentencia**. Es decir, el señor Rodríguez Rosario podía solicitar la exclusión a partir del **29 de septiembre de 2020**. Así las cosas y sin haberle nacido el derecho de solicitar la exclusión, nuevamente enmiendan el estatuto con la Ley Núm. 243-2011. Esta última legislación con aplicación igualmente retroactiva es la que estableció

las categorías de ofensores I, II y III y los correspondientes períodos de permanencia en el Registro.

Cónsono con el esquema establecido por las referidas legislaciones y lo resuelto el *Ferrer Maldonado*, el Sr. Rodríguez Rosario, clasificado como Ofensor Tipo III debe permanecer inscrito de por vida en el Registro de Ofensores Sexuales.[19]

Por lo anterior, procede que expidamos y confirmemos la Resolución cuya revisión se solicita.

IV.

Por los fundamentos antes expuestos, EXPEDIMOS el auto de *certiorari* y CONFIRMAMOS la Resolución recurrida.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[19] Esta ley entró en vigor el 14 de diciembre de 2011. La ley dispuso que quedarían registradas "las personas que al momento de la aprobación de esta Ley, tenían la obligación de registrarse bajo la Ley 28-1997."